KC **FILED**

JAN 1 1 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| INDYMAC BANK, FSB, Assignee of Mortgage Electronic Registrations Systems, Inc., as Nominee for Mortgage Gallery, Inc., | ) ) ) ) No. Judge |
| Plaintiff, | ) ) (Formerly No. 07 CH 36313 |
| v. | ) Circuit Court of Cook County) |
| BOGDAN GANESCU, et al., | ) ) |
| Defendant. | ) |

**NOTICE OF FILING OF PAPERS REMOVING
ACTION TO THE UNITED STATES DISTRICT COURT**

TO:  SEE ATTACHED SERVICE LIST

PLEASE TAKE NOTICE that on January 11, 2008, a Notice of Removal of the complaint

in the above-titled action was filed with the Clerk of the United States District Court for the Northern

District of Illinois. The notice was filed by and on behalf of the named federal defendant, UNITED

STATES OF AMERICA.

TAKE FURTHER NOTICE that, as provided by 28 U.S.C. §1446(d), the Circuit Court of

Cook County, Illinois, "shall proceed no further on Indymac Bank, FSB' complaint unless and until

the case is remanded." A copy of the Notice of Removal, with attachments, is annexed to this

Notice. This Notice is furnished and shall be filed as provided by 28 U.S.C. §1446(d).

PATRICK J. FITZGERALD
United States Attorney

/s/ Joel Nathan

JOEL NATHAN (ARDC 2019566)
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-8449

**08CV272
JUDGE MORAN
MAGISTRATE JUDGE ASHMAN**

## AFFIDAVIT OF MAILING

LESLIE STEFFEN, being first duly sworn on oath deposes and says that she is employed in the office of the United States Attorney for the Northern District of Illinois; that on the *11th* day of ___January___ 2008, she placed a copy of its,

Notice of Filing of Papers Removing Action to the United States District Court and
Notice of Removal to the United States District Court for the Northern District of Illinois,

in an envelope addressed to each of the following named individuals and caused each envelope to be deposited in the United States mail chute located in the Everett McKinley Dirksen Building, Chicago, Illinois, on said date.

Law Offices of Ira T. Nevel
175 N. Franklin, Suite 201
Chicago, IL 60606

Bogdan Ganescu
2234 S. Goebbert Road, Unit 419
Arlington Heights, IL 60005

Mortgage Electronic Registration Systems, Inc.
c/o CT Corporation System
208 S. LaSalle Street
Chicago, IL 60604

Harris, N.A.
111 W. Monroe Street
Chicago, IL 60603

Statman, Harris, Eyrich, LLC
200 W Madison, Ste 3820
Chicago, IL 60606

The Sanctuary of Arlington Heights Condominium Assoc.
2234 S. Goebbert Road
Arlington Heights, IL 60005

Citibank, N.A., f/k/a Citibank, FSB
11800 Spectrum Center Drive
Reston, VA 22090

Steven R Shanin
53 W Jackson, Ste 920
Chicago, IL 60604

*Leslie Steffen*

SUBSCRIBED AND SWORN TO before me

this *11th* day of *January* , 2008

*Paula M. Gabriel*

NOTARY PUBLIC

"OFFICIAL SEAL"
Paula M. Gabriel
Notary Public, State of Illinois
My Commission Exp. 01/17/2010

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KC **F I L E D**

JAN 1 1 2008
Jan 11, 2008
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

INDYMAC BANK, FSB, Assignee of )
Mortgage Electronic Registrations Systems, )
Inc., as Nominee for Mortgage Gallery, Inc., )
)
Plaintiff, )
)
v. )
)
BOGDAN GANESCU, et al., )
)
Defendant. )
)
)
)

**08CV272**
**JUDGE MORAN**
**MAGISTRATE JUDGE ASHMAN**

(Formerly No. 07 CH 36313
Circuit Court of Cook County)

**NOTICE OF REMOVAL**
**TO THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

The federal defendant, UNITED STATES OF AMERICA, respectfully states as follows:

1.     The federal defendant has been made a party to the civil action now pending

in the Circuit Court of Cook County, Illinois entitled, *Indymac Bank, FSB, Assignee of Mortgage*

*Electronic Registration Systems, Inc., as Nominee for Mortgage Gallery, Inc. v. Bogdan Ganescu,*

*et al.,* Case No. 07 CH 36313

2.     If the United States has waived its sovereign immunity to be sued, such waiver

would be pursuant to 28 U.S.C. § 2410.

3.     This case is removable to the United States District Court for the Northern

District Court of Illinois, Eastern Division, pursuant to 28 U.S.C. §§ 1442 and 1444.

4.     A copy of the process and pleadings served upon the federal defendant,

UNITED STATES OF AMERICA, are attached hereto.

5.     No previous application for removal in this case has been made.

WHEREFORE, the UNITED STATES OF AMERICA respectfully requests that this

case be removed to this Court, as a properly removed case, and entered upon the docket of this Court

and, upon filing a copy of this notice with the Clerk of Circuit Court of Cook County, Illinois, the said state court shall proceed no further unless this case is remanded.

Respectfully submitted,

/s/ Joel Nathan

JOEL NATHAN (ARDC 2019566)
Assistant United States Attorney
219 South Dearborn Street
Chicago, Illinois 60604
(312) 353-8449

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

INDYMAC BANK, FSB, ASSIGNEE OF )
MORTGAGE ELECTRONIC REGISTRATION )
SYSTEMS, INC. AS NOMINEE FOR )
MORTGAGE GALLERY, INC., )
)
              Plaintiff(s), )
)
vs. )
)
BOGDAN GANESCU, CITIBANK, N.A., )
F/K/A CITIBANK, FSB, UNDER MORTGAGE )
RECORDED AS DOCUMENT NUMBER )
0532221083, THE SANCTUARY OF )
ARLINGTON HEIGHTS CONDOMINIUM )
ASSOCIATION, UNITED STATES OF )
AMERICA, UNDER CASE NUMBER )
04 GJ 1008, MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., UNDER )
MORTGAGE RECORDED AS DOCUMENT )
NUMBER 0514433138, HARRIS, N.A., )
UNDER MORTGAGE RECORDED AS DOCUMENT )
NUMBER 0527042038, NONRECORD )
CLAIMANTS, UNKNOWN TENANTS AND )
UNKNOWN OWNERS, )
)
            Defendant(s). )

Case No.

# 07CH36313

SEE ATTACHED FOR SERVICE

## SUMMONS

To each Defendant:

    YOU ARE SUMMONED and required to file an Answer in this case, or otherwise file your Appearance in the office of the Clerk of this Court (located in the Richard J. Daley Center, Room 802, Chicago, Illinois 60602), within 30 days after service of this Summons, not counting the day of service. IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

To the Officer:

    This Summons must be returned by the Officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, _____ , 2007

_____
Clerk of Court

Date of service: _____ , 2007
(To be inserted by Officer on copy left with Defendant or other person)

Attorney No. 18837
LAW OFFICES OF IRA T. NEVEL
175 North Franklin
Suite 201
Chicago, Illinois 60606
(312) 357-1125

## CLERK OF THE CIRCUIT COURT OF COOK COUNTY

1

### NOTICE REQUIRED BY THE FAIR DEBT COLLECTION PRACTICES ACT (the Act), 15 U.S.C., SECTION 1601, AS AMENDED

1.    This is an attempt to collect a debt.  Any information acquired in the conduct of this matter will be used for that purpose.

2.    The amount of the debt is stated in Paragraph 8 of the Complaint to Foreclose Mortgage attached hereto.

3.    The Plaintiff, as named in the attached Summons and Complaint, is the creditor to whom the debt is owed, or is the servicing agent for the creditor to whom the debt is owed.

4.    The debt described in the Complaint attached hereto and evidenced by the copy of the Mortgage and Note attached hereto, will be assumed to be valid by the creditor's law firm unless the debtor, within thirty (30) days after the receipt of this notice, disputes in writing the validity of the debt or some portion thereof.

**This thirty (30) day period, if exercised, will take priority over all deadlines which you have under State or Federal law under this Summons.**

5.    If the debtor notifies the creditor's law firm in writing, within thirty (30) days of the receipt of this notice, that the debt, or any portion thereof, is disputed, the creditor's law firm will obtain verification of the debt and a copy of the verification will be mailed to the debtor by the creditor's law firm.

6.    The name of the original creditor is set forth in the Mortgage and Note attached hereto.  If the creditor named as Plaintiff in the attached Summons and Complaint is not the original creditor, and if the debtor makes a written request to the creditor's law firm, within thirty (30) days from the receipt of this notice, the name and address of the original creditor will be mailed to the debtor by the creditor's law firm.

**Should the thirty (30) day period herein be exercised, it shall have priority over all other deadlines contained in this Summons.**

7.    Written requests should be addressed to Law Offices of Ira T. Nevel, Fair Debt Collection Department, 175 North Franklin, Suite 201, Chicago, Illinois  60606.

## SERVICE LIST

BOGDAN GANESCU
2234 SOUTH GOEBBERT ROAD
UNIT 419
ARLINGTON HEIGHTS, IL 60005

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
C/O CT CORPORATION SYSTEM
208 SOUTH LASALLE STREET
CHICAGO, ILLINOIS 60604

HARRIS, N.A.
111 WEST MONROE STREET
CHICAGO, IL 60603

THE SANCTUARY OF ARLINGTON HEIGHTS CONDOMINIUM ASSOCIATION
2234 SOUTH GOEBBERT ROAD
ARLINGTON HEIGHTS, IL 60005

UNITED STATES OF AMERICA
ATTN: CIVIL DIVISION
C/O US ATTORNEY
219 SOUTH DEARBORN
12TH FLOOR
CHICAGO, ILLINOIS 60604

## FAIRFAX COUNTY SERVICE IN VIRGINIA

CITIBANK, N.A., F/K/A CITIBANK, FSB
11800 SPECTRUM CENTER DRIVE
RESTON, VIRGINIA 22090

## CERTIFIED MAIL ONLY

UNITED STATES OF AMERICA
U.S. ATTORNEY GENERAL
10TH & CONSTITUTION
WASHINGTON, D.C. 20530

3

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS

COUNTY DEPARTMENT, CHANCERY DIVISION

INDYMAC BANK, FSB, ASSIGNEE OF )
MORTGAGE ELECTRONIC REGISTRATION )
SYSTEMS, INC., AS NOMINEE FOR )
MORTGAGE GALLERY, INC., )
     )
         Plaintiff(s), )
     )
vs. )    Case No.
     ) **07 CH 36313**
BOGDAN GANESCU, CITIBANK, N.A., )
F/K/A CITIBANK, FSB, UNDER MORTGAGE )
RECORDED AS DOCUMENT NUMBER )
0532221083, THE SANCTUARY OF )
ARLINGTON HEIGHTS CONDOMINIUM )
ASSOCIATION, UNITED STATES OF )
AMERICA, UNDER CASE NUMBER )
04 GJ 1008, MORTGAGE ELECTRONIC )
REGISTRATION SYSTEMS, INC., UNDER )
MORTGAGE RECORDED AS DOCUMENT )
NUMBER 0514433138, HARRIS, N.A., )
UNDER MORTGAGE RECORDED AS DOCUMENT )
NUMBER 0527042018, NONRECORD )
CLAIMANTS, UNKNOWN TENANTS AND )
UNKNOWN OWNERS, )
     )
         Defendant(s). )

### COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES INDYMAC BANK, FSB, ASSIGNEE OF MORTGAGE ELECTRONIC

REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE GALLERY, INC.,

the Plaintiff in the above entitled cause, by and through its

attorney, LAW OFFICES OF IRA T. NEVEL, and complains of BOGDAN

GANESCU, CITIBANK, N.A., F/K/A CITIBANK, FSB, UNDER MORTGAGE

RECORDED AS DOCUMENT NUMBER 0532221083, THE SANCTUARY OF ARLINGTON

1

HEIGHTS CONDOMINIUM ASSOCIATION, UNITED STATES OF AMERICA, UNDER CASE NUMBER 04 GJ 1008, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., UNDER MORTGAGE RECORDED AS DOCUMENT NUMBER 0514433138, HARRIS, N.A., UNDER MORTGAGE RECORDED AS DOCUMENT NUMBER 0527042038, NONRECORD CLAIMANTS, UNKNOWN TENANTS and UNKNOWN OWNERS, the Defendants, as follows:

1.     That BOGDAN GANESCU, Defendant(s) herein, hereinafter referred to as the Mortgagor(s), executed a Mortgage to the Plaintiff, INDYMAC BANK, FSB, ASSIGNEE OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE GALLERY, INC., or its predecessors, in the sum of $168,000.00. One or more of the Mortgagors made, executed and delivered to the Plaintiff his certain Adjustable Rate Note in the principal sum aforesaid, dated September 12, 2005, a copy of said Note is attached hereto and marked as Plaintiff's Exhibit "A" and incorporated herein by reference. The Plaintiff is the owner of the Adjustable Rate Note and Mortgage.

2.     That said Note is payable with interest at the rate of 8.1250 percent per annum, said principal and interest being payment in monthly installments as follows:  $580.87 on November 1, 2005, and a like sum on the first day of each and every month thereafter until said Note shall be fully paid.

3.     The Note further provides that upon any default of said

2

Note, or any instrument securing it, the unpaid balance thereon shall become accelerated and immediately due and payable.

4.    That said Mortgagor(s), in order to secure the payment of the principal and interest of said Adjustable Rate Note, above described, duly made, executed and delivered to the Plaintiff a Mortgage, of even date, whereby said Mortgagor(s) did mortgage and warrant to this Plaintiff the following described real estate, situated in the County of Cook, and State of Illinois, to wit:

> LOT 419 IN THE SANCTUARY OF ARLINGTON HEIGHTS CONDOMINIUM, AS DELINEATED ON THE SURVEY OF THE FOLLOWING DESCRIBED PROPERTY: PART OF LOT 1 IN MARCY'S FOREST VIEW SUBDIVISION, BEING A SUBDIVISION OF THE EAST 1/2 OF THE SOUTH 1/2 OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 15, TOWNSHIP 41 NORTH, RANGE 11, EAST OF THE THIRD PRINCIPAL MERIDIAN, ACCORDING TO THE PLAT THEREOF RECORDED OCTOBER 27, 1964 AS DOCUMENT 1928644, WHICH SURVEY IS ATTACHED AS EXHIBIT "C" TO THE DECLARATION OF CONDOMINIUM RECORDED AS DOCUMENT 0411231052, IN COOK COUNTY, ILLINOIS, AS AMENDED FROM TIME TO TIME, TOGETHER WITH ITS UNDIVIDED PERCENTAGE INTEREST IN THE COMMON ELEMENTS.

Common Address: 2234 South Goebbert Road, Unit 419, Arlington Heights, Illinois 60005

Tax Number: 08-15-103-039-1091

together with all building improvements now or hereafter erected thereon, including all fixtures, appurtenances, appliances, specifically set forth in the Mortgage, and together with all rents, issues and profits for the uses and purposes therein set forth as will more fully appear in a true copy of said Mortgage, which is attached hereto as Plaintiff's Exhibit "B" and

3

incorporated herein by reference. BOGDAN GANESCU is the present owner(s) of the subject property.

5. That said Mortgage was duly executed and acknowledged in all respects in conformity with law, including the waiver and release of all rights under and by virtue of the Homestead Exemption Laws of Illinois, and was on September 29, 2005, filed for record in the office of the Cook County Recorder of Deeds as Document Number 0527205332. The interest secured by Plaintiff's Mortgage is fee simple and that interest is being sought herein.

6. That said Mortgagor(s) further covenanted, as more fully appears in the copy of the Mortgage attached hereto, that in the event of his failure to perform any of the covenants therein contained, the Mortgagee may do everything in its behalf so covenanted, and any expenditures made thereby shall become so much additional indebtedness secured by the Mortgage and shall be included in any decree foreclosing said Mortgage.

7. The Mortgagor(s) further covenanted that in the event of a foreclosure, a Receiver may be appointed to take possession of the real estate and to collect the rents, issues and profits therefrom, said rents, issues and profits to be applied toward Receiver's expenses, Court costs, costs and fees respecting foreclosure Sale and any necessary expenditures made by the Plaintiff, including reasonable attorney's fees, advertising

4

expenses, insurance and any other costs or expenses necessary to protect or preserve the property.

8.    That default was made in the payment of the installments of principal and interest falling due under the terms of said Note; that default occurred on January 1, 2007, that the Plaintiff is still the owner and legal holder of the Note here above described and that there remains due and owing the Plaintiff as of January 1, 2007, the principal balance of $173,928.65 on the Note described above.   There is a $39.31 per diem.

9.    That because of said default, the Plaintiff has incurred title expenses and will incur additional title expenses, has employed counsel to institute this proceeding and will be compelled to incur expenses for the payment of taxes now due or to become due, plus Court costs, fees and costs respecting foreclosure Sale and other expenses related to this proceeding, all of which will constitute so much additional indebtedness secured by the Mortgage being foreclosed herein.

10.    That the real estate conveyed by the Mortgage being sought to be foreclosed in this proceeding is located at 2234 South Goebbert Road, Unit 419, Arlington Heights, Illinois 60005.

11.    That the following person(s) and/or entities may have an interest in the real estate being foreclosed herein and whose equitable right to redeem or interest is sought to be barred:

5

BOGDAN GANESCU, CITIBANK, N.A., F/K/A CITIBANK, FSB,
UNDER MORTGAGE RECORDED AS DOCUMENT NUMBER 0532221083,
THE   SANCTUARY   OF   ARLINGTON   HEIGHTS   CONDOMINIUM
ASSOCIATION, UNITED STATES OF AMERICA, UNDER CASE NUMBER
04 GJ 1008, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS,
INC.,   UNDER   MORTGAGE   RECORDED   AS   DOCUMENT   NUMBER
0514433138,   HARRIS,   N.A.,   UNDER MORTGAGE RECORDED AS
DOCUMENT NUMBER 0527042038, NONRECORD CLAIMANTS, UNKNOWN
TENANTS and UNKNOWN OWNERS

12. Plaintiff avers that in addition to the person(s)
designated by name herein, there are other persons who are
interested in this action and who have, or claim some right, title,
interest or lien in, to or upon the real estate or some part
thereof in this Complaint described, that the name of each such
other persons is unknown to the Plaintiff and upon diligent
inquiry, cannot be ascertained, and all such persons are,
therefore, made party Defendants to this action by the name and
description of NONRECORD CLAIMANTS, UNKNOWN TENANTS and UNKNOWN
OWNERS.

WHEREFORE, THE PLAINTIFF PRAYS:

A. That an accounting be taken of the amounts due and owing
to the Plaintiff of said Adjustable Rate Note and under the
provisions of said Mortgage, together with interest thereon,
reasonable attorney's fees, stenographer's fees, outlays for
documentary evidence, title expenses and all other costs and
expenses reasonably incurred in this proceeding, as statute or
equity will allow.

6

B.    That said Mortgage and the amounts found due Plaintiff thereunder be declared a good, valid and subsisting first lien upon the premises described herein, having priority over all other Defendants in this cause.

C.    That upon application by Plaintiff, a Consent Decree of Foreclosure pursuant to 735 ILCS 5/15-1402 be entered.

D.    That in the event said premises are not redeemed according to law, that a Sheriff's Sale or Judicial Sale be held and a Certificate of Sale be issued to the successful purchaser. Further, that upon confirmation of said Sale by this Court, that a Sheriff's Deed or Judicial Deed be then issued to the then holder of said Certificate. Upon issuance of a Sheriff's Deed or Judicial Sale Deed, the holder thereof shall be entitled to an Order of Possession for the subject premises and such an Order of Possession shall be included in the Order confirming said Sheriff's Sale or Judicial Sale, with execution to issue pursuant to statute.

E.    That upon delivery of said Sheriff's Deed or Judicial Deed, each and all of the Defendants shall be forever barred and foreclosed of all right, title, interest and equity of redemption in said premises.

F.    That upon application, a Receiver of the Mortgagee may be appointed during the pendency of this suit to take possession of said premises, and that in the event a Receiver or Mortgagee is

7

appointed, such Receiver or Mortgagee have all the customary powers of Receivers or Mortgagee in Possession in Chancery, including the right to find tenants for the premises, to collect the rents, issues and profits of said premises, to insure the premises, employ counsel and to make the necessary repairs.

G.    That all leasehold interests of any of the Defendants be terminated.

H.    That Plaintiff has such other and further relief as equity may require and that this Court may deem appropriate.

LAW OFFICES OF IRA T. NEVEL

ATTORNEY FOR PLAINTIFF

8

STATE OF ILLINOIS )
                 ) SS
COUNTY OF C O O K )


## VERIFICATION

I, IRA T. NEVEL, being first duly sworn on oath, depose and state pursuant to 735 ILCS 5/2-605, that I am an attorney and agent of the Plaintiff, INDYMAC BANK, FSB, ASSIGNEE OF MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR MORTGAGE GALLERY, INC., in the above entitled cause; that I have read the foregoing Complaint to Foreclose Mortgage; that upon information and belief, it is true and correct, in substance and in fact, based upon the information supplied by the Plaintiff.


_____
IRA T. NEVEL
Attorney for Plaintiff


Attorney No.  18837
LAW OFFICES OF IRA T. NEVEL
175 North Franklin
Suite 201
Chicago, Illinois  60606
(312) 357-1125


9




MIN NO. : 112065706382823

## ADJUSTABLE RATE NOTE
(MTA-Twelve Month Average Index - Payment Caps)

THIS NOTE CONTAINS PROVISIONS THAT WILL CHANGE THE INTEREST RATE
AND THE MONTHLY PAYMENT. THERE MAY BE A LIMIT ON THE AMOUNT
THAT THE MONTHLY PAYMENT CAN INCREASE OR DECREASE. THE
PRINCIPAL AMOUNT TO REPAY COULD BE GREATER THAN THE AMOUNT
ORIGINALLY BORROWED, BUT NOT MORE THAN THE MAXIMUM LIMIT
STATED IN THIS NOTE.

| September 12, 2005 | Chicago | ILLINOIS |
|---|---|---|
| [Date] | [City] | [State] |

2234 S Goebbert Rd Apt 419, Arlington Heights, ILLINOIS 60005
[Property Address]

### 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $168,000.00        (this amount is
called "Principal"), plus interest, to the order of Lender. The Principal amount may increase as provided under
the terms of this Note but will never exceed ( ONE HUNDRED FIFTEEN PERCENT        ) of the
Principal amount I originally borrowed. This is called the "Maximum Limit." Lender is
MORTGAGE GALLERY, INC.
I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who
is entitled to receive payments under this Note is called the "Note Holder."

### 2.   INTEREST

#### (A)   Interest Rate
Interest will be charged on unpaid Principal until the full amount of Principal has been paid. I will pay
interest at a yearly rate of    1.0000 %. The interest rate I will pay may change.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described
in Section 7(B) of this Note.

#### (B)   Interest Rate Change Dates
The interest rate I will pay may change on the 1st        day of November, 2005   , and on that
day every month thereafter. Each date on which my interest rate could change is called an "Interest Rate Change
Date." The new rate of interest will become effective on each Interest Rate Change Date. The interest rate may
change monthly, but the monthly payment is recalculated in accordance with Section 3.

#### (C)   Index
Beginning with the first Interest Rate Change Date, my adjustable interest rate will be based on an Index.
The "Index" is the "Twelve-Month Average" of the annual yields on actively traded United States Treasury
Securities adjusted to a constant maturity of one year as published by the Federal Reserve Board in the Federal
Reserve Statistical Release entitled "Selected Interest Rates (H.15)" (the "Monthly Yields"). The Twelve Month
Average is determined by adding together the Monthly Yields for the most recently available twelve months and
dividing by 12. The most recent Index figure available as of the date 15 days before each Interest Rate Change
Date is called the "Current Index".

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable
information. The Note Holder will give me notice of this choice.

#### (D)   Calculation of Interest Rate Changes
Before each Interest Rate Change Date, the Note Holder will calculate my new interest rate by adding
Three and Two Hundred
Seventy-Five Thousandths        percentage point(s)   3.2750 % ("Margin") to the Current Index. The
Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point
(0.125%). This rounded amount will be my new interest rate until the next Interest Rate Change Date. My
interest will never be greater than    9.9500 %. Beginning with the first Interest Rate Change Date, my interest
rate will never be lower than the Margin.

### 3.   PAYMENTS

#### (A)   Time and Place of Payments
I will make a payment every month.

I will make my monthly payments on the 1st        day of each month beginning on
November 1, 2005   . I will make these payments every month until I have paid all the Principal and Interest
and any other charges described below that I may owe under this Note. Each monthly payment will be applied as
of its scheduled due date and will be applied to interest before Principal. If, on October 1, 2035        , I
still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity
Date."

I will make my monthly payments at
5501 WEST IRVING PARK ROAD CHICAGO, ILLINOIS 60641
or at a different place if required by the Note Holder.
4040534S

PayOption ARM Note - MTA Index
FE-5312 (0412)                                   Page 1 of 4                                   10/04

DE 26195-01




**(B)  Amount of My Initial Monthly Payments**

Each of my initial monthly payments until the first Payment Change Date will be in the amount of U.S. $540.35      unless adjusted under Section 3 (F).

**(C)  Payment Change Dates**

My monthly payment may change as required by Section 3(D) below beginning on the  1st      day of  November ,  2006  , and on that day every 12th month thereafter. Each of these dates is called a "Payment Change Date." My monthly payment also will change at any time Section 3(F) or 3(G) below requires me to pay a different monthly payment. The "Minimum Payment" is the minimum amount the Note Holder will accept for my monthly payment which is determined at the last Payment Change Date or as provided in Section 3(F) or 3(G) below.  If the Minimum Payment is not sufficient to cover the amount of the interest due then negative amortization will occur.

I will pay the amount of my new Minimum Payment each month beginning on each Payment Change Date or as provided in Section 3(F) or 3(G) below.

**(D)  Calculation of Monthly Payment Changes**

At least 30 days before each Payment Change Date, the Note Holder will calculate the amount of the monthly payment that would be sufficient to repay the unpaid Principal that I am expected to owe at the Payment Change Date in full on the maturity date in substantially equal payments at the interest rate effective during the month preceding the Payment Change Date. The result of this calculation is called the "Full Payment." Unless Section 3(F) or 3(G) apply, the amount of my new monthly payment effective on a Payment Change Date, will not increase by more than 7.5% of my prior monthly payment. This 7.5% limitation is called the "Payment Cap." This Payment Cap applies only to the Principal and Interest payment and does not apply to any escrow payments Lender may require under the Security Instrument. The Note Holder will apply the Payment Cap by taking the amount of my Minimum Payment due the month preceding the Payment Change Date and multiplying it by the number 1.075. The result of this calculation is called the "Limited Payment." Unless Section 3(F) or 3(G) below requires me to pay a different amount, my new Minimum Payment will be the lesser of the Limited Payment and the Full Payment. I also have the option to pay the Full Payment for my monthly payment.

**(E)  Additions to My Unpaid Principal**

Since my monthly payment amount changes less frequently than the interest rate, and since the monthly payment is subject to the payment limitations described in Section 3 (D), my Minimum Payment could be less than or greater than the amount of the interest portion of the monthly payment that would be sufficient to repay the unpaid Principal I owe at the monthly payment date in full on the Maturity Date in substantially equal payments. For each month that my monthly payment is less than the interest portion, the Note Holder will subtract the amount of my monthly payment from the amount of the interest portion and will add the difference to my unpaid Principal, and interest will accrue on the amount of this difference at the interest rate required by Section 2. For each month that the monthly payment is greater than the interest portion, the Note Holder will apply the payment as provided in Section 3 (A).

**(F)  Limit on My Unpaid Principal; Increased Monthly Payment**

My unpaid Principal can never exceed the Maximum Limit equal to      115  percent of the Principal amount I originally borrowed. My unpaid Principal could exceed that Maximum Limit due to Minimum Payments and interest rate increases. In that event, on the date that my paying my monthly payment would cause me to exceed that limit, I will instead pay a new monthly payment. This means that my monthly payment may change more frequently than annually and such payment changes will not be limited by the 7.5% Payment Cap. The new Minimum Payment will be in an amount that would be sufficient to repay my then unpaid Principal in full on the Maturity Date in substantially equal payments at the current interest rate.

**(G)  Required Full Payment**

On the fifth Payment Change Date and on each succeeding fifth Payment Change Date thereafter, I will begin paying the Full Payment as my Minimum Payment until my monthly payment changes again. I also will begin paying the Full Payment as my Minimum Payment on the final Payment Change Date.

**(H)  Payment Options**

After the first Interest Rate Change Date, Lender may provide me with up to three (3) additional payment options that are greater than the Minimum Payment, which are called "Payment Options." I may be given the following Payment Options:

> (i)   Interest Only Payment:  the amount that would pay the interest portion of the monthly payment at the current interest rate. The Principal balance will not be decreased by this Payment Option and it is only available if the interest portion exceeds the Minimum Payment.
>
> (ii)  Fully Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) at the Maturity Date in substantially equal payments.
>
> (iii)  15 Year Amortized Payment:  the amount necessary to pay the loan off (Principal and Interest) within a fifteen (15) year term from the first payment due date in substantially equal payments. This monthly payment amount is calculated on the assumption that the current rate will remain in effect for the remaining term.

These Payment Options are only applicable if they are greater than the Minimum Payment.

40405845

PayOption ARM Note - MTA Index
FE-3372 (0412)                        Page 2 of 4                        10/04

  23185-02




**4.    NOTICE OF CHANGES**

The Note Holder will deliver or mail to me a notice of any changes in the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**5.    BORROWER'S RIGHT TO PREPAY**    SEE ATTACHED PREPAYMENT PENALTY ADDENDUM OR RIDER WHICH AMENDS THIS SECTION.

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying any Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payments. My partial Prepayment may reduce the amount of my monthly payments after the first Payment Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6.    LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7.    BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A)    Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of fifteen (15) calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0000 % of my overdue payment of Principal and Interest. I will pay this late charge promptly but only once on each late payment.

**(B)    Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C)    Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. The date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)    No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)    Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. These expenses include, for example, reasonable attorneys' fees.

**8.    GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**9.    OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all the amounts owed under this Note.

40405845

PayOption ARM Note - MTA Index

FE-5312 (0412)                    Page 3 of 6                    10/04

    25195-03




### 10.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

### 11.  SECURED NOTE

In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of these conditions are described as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

> If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

> To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

> If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
Bogdan Ganescu                Borrower                                       Borrower

_____ (Seal)          _____ (Seal)
                              Borrower                                       Borrower

_____ (Seal)          _____ (Seal)
                              Borrower                                       Borrower

_____ (Seal)          _____ (Seal)
                              Borrower                                       Borrower

SEE ATTACHED ALLONGE FOR ENDORSEMENT

40405845
PayOption ARM Note - MTA Index                                                           10/04
FE-5312 (0412)                          Page 4 of 4                                       25193-04

Return To:

MortgageIT
DEMING PARK BUILDING
1350 DEMING WAY, 3RD FLOOR
MIDDLETON, WI 53562
ATTN: FINAL DOCS DEPARTMENT
Prepared By:

Ed Hapke
33 MAIDEN LANE, 6TH FLOOR
NEW YORK, NEW YORK 10038



Doc#: 0527205332 Fee: $74.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 09/29/2005 09:35 PM Pg: 1 of 26

—————————————[Space Above This Line For Recording Data]—————————————



## MORTGAGE

*TM189015*
*MARQUIS TITLE ½*

MIN 100112065706382823

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated September 12, 2005 together with all Riders to this document.
(B) "Borrower" is Bogdan Ganescu, an Unmarried Man

Borrower is the mortgagor under this Security Instrument.
(C) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

40405845

ILLINOIS - Single Family - Fannie Mae/Freddie Mac **UNIFORM INSTRUMENT WITH MERS**          Form 3014  1/01

-6A(IL) (0010).01

Page 1 of 15          Initials: BG

VMP MORTGAGE FORMS - (800)521-7291

20112-01

(D) "Lender" is MORTGAGE GALLERY, INC.

Lender is a CORPORATION
organized and existing under the laws of THE STATE OF ILLINOIS
Lender's address is 5501 WEST IRVING PARK ROAD
CHICAGO, ILLINOIS 60641
(E) "Note" means the promissory note signed by Borrower and dated September 12, 2005
The Note states that Borrower owes Lender One Hundred Sixty-Eight Thousand and 00/100
                                                                                    Dollars
(U.S. $168,000.00          ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than October 1, 2035
(F) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(G) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(H) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| [X] Adjustable Rate Rider | [X] Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(I) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(J) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(K) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(L) "Escrow Items" means those items that are described in Section 3.
(M) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(N) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(O) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(P) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

40405845

VMP-6A(IL) (0010).01                         Page 2 of 15              initials: BG              Form 3014  1/01
                                                                                                20112-02

052___332 Page: 3 of 26

(Q) "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, the following described property located in the
COUNTY                                                    [Type of Recording Jurisdiction]
of Cook                                                   [Name of Recording Jurisdiction]:
See Legal description attached hereto and made a part hereof

Parcel ID Number: 08-15-103-035-0000                    which currently has the address of
2234 S Goebbert Rd Apt 419                                                          [Street]
Arlington Heights                              [City], Illinois 60005          [Zip Code]
("Property Address"):

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.
    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.
    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.
    UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
    1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items

40405845

Initials: ___

-6A(IL) (0010).01                    Page 3 of 15                    Form 3014    1/01

20112-03

pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

40405845

Initials: BG

●-6A (IL) (0010).01                Page 4 of 15                Form 3014   1/01

20112-04

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

40405845

-6A(IL) (0010).01                    Page 5 of 15                    Form 3014   1/01

20112-05

lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with

40405845

-6A(IL) (0010).01                              Page 6 of 15                              Initials: BG                 Form 3014   1/01

20112-06

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

40405845

-6A(IL) (0010)01                          Page 7 of 15                          Form 3014   1/01

20112-07

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

40405845

-6A(IL) (0010).01    Page 8 of 15    Initials: BG    Form 3014  1/01

20112-08

(b) Any such agreements will not affect the rights Borrower has – if any – with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

40405845

-6A(IL) (0010).01                                        Page 9 of 15                          Initials: PG                    Form 3014   1/01

20112-09

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

    13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

    Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

    14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

    If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

    15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

40405845

    -6A(IL) (0010).01          Page 10 of 15          Initials: BG          **Form 3014**   1/01

20112-10

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

40405845

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

40405845

-6A(IL) (0010).01                    Page 12 of 15                    Initials:                    Form 3014   1/01

20112-12



NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. **Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

23. **Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

24. **Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

25. **Placement of Collateral Protection Insurance.** Unless Borrower provides Lender with evidence of the insurance coverage required by Borrower's agreement with Lender, Lender may purchase insurance at Borrower's expense to protect Lender's interests in Borrower's collateral. This insurance may, but need not, protect Borrower's interests. The coverage that Lender purchases may not pay any claim that Borrower makes or any claim that is made against Borrower in connection with the collateral. Borrower may later cancel any insurance purchased by Lender, but only after providing Lender with evidence that Borrower has obtained insurance as required by Borrower's and Lender's agreement. If Lender purchases insurance for the collateral, Borrower will be responsible for the costs of that insurance, including interest and any other charges Lender may impose in connection with the placement of the insurance, until the effective date of the cancellation or expiration of the insurance. The costs of the insurance may be added to Borrower's total outstanding balance or obligation. The costs of the insurance may be more than the cost of insurance Borrower may be able to obtain on its own.

40405845

-6A(IL) (0010).01

Page 13 of 15

Initials: BG

Form 3014    1/01

20112-13

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____        _____ (Seal)
                                     Bogdan Ganescu              -Borrower


_____        _____ (Seal)
                                                                 -Borrower


_____ (Seal)         _____ (Seal)
                      -Borrower                                  -Borrower


_____ (Seal)         _____ (Seal)
                      -Borrower                                  -Borrower


_____ (Seal)         _____ (Seal)
                      -Borrower                                  -Borrower


40405845

-6A(IL) (0010).01                    Page 14 of 15              Form 3014  1/01
                                                                     20112-14

0527 5332 Page: 15 of 26

STATE OF ILLINOIS, Cook County ss:
I, the undersigned , a Notary Public in and for said county and
state do hereby certify that Bogdan Ganescu

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing instrument,
appeared before me this day in person, and acknowledged that he/she/they signed and delivered the said
instrument as his/her/their free and voluntary act, for the uses and purposes therein set forth.
Given under my hand and official seal, this 12th day of September, 2005

My Commission Expires:

_____
Notary Public

"OFFICIAL SEAL"
Matthew J. Hood
Notary Public, State of Illinois
My Commission Exp. 08/16/2009

40405845

-6A (IL) (0010).01                    Page 15 of 15                    Form 3014  1/01
                                                                       20112-15